UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KENNETH BOYD,<br><br>  Plaintiff,<br><br>v.<br><br>DEPUTY F/N/U HALLEY, et al.<br><br>  Defendants. | No. 3:16-cv-00697<br><br>Chief Judge Crenshaw<br>Magistrate Judge Newbern |

To:   The Honorable Waverly D. Crenshaw, Jr., Chief Judge

**REPORT AND RECOMMENDATION**

The District Court referred this Section 1983 action to the undersigned magistrate judge under 28 U.S.C. § 636 for pre-trial case management and to issue a Report and Recommendation on all dispositive motions. (Doc. No. 4.) Pending before the Court is the unopposed motion for summary judgment of Defendants Deputy Brian Halley, Mayor Bill Rial, Sheriff Jeff Bledsoe, Chief Jerone Holt, and Rondia Felts (Doc. No. 36). The undersigned RECOMMENDS that the Motion for Summary Judgment be GRANTED.

**I.   Background**

   **A.   Factual Background[1]**

On January 30, 2016, at approximately 12:14 pm, Deputy Brian Halley and Deputy Richard Brush were overseeing the distribution of lunch trays to inmates at the Dickson County Jail. (Doc. No. 38, PageID# 149; Doc. No. 39-2, PageID# 234, ¶ 2; Doc. No. 39-3, PageID# 244, ¶ 2.) Jail

---

[1]   These facts are taken from Defendants' Statement of Undisputed Material Fact (Doc. No. 38) and accompanying materials filed in support of that statement (Doc. No. 39).

inmates are issued two uniform orange shirts upon admission to the facility, and jail policy requires that they wear one of these shirts in order to receive a lunch tray. (Doc. No. 38, PageID# 149; Doc. No. 39-1, PageID# 162, ¶¶ 10–11; Doc. No. 39-2, PageID# 234, ¶ 3; Doc. No. 39-3, PageID# 244, ¶ 3.) When Plaintiff Kenneth Boyd entered the area where trays were being distributed at approximately 12:15 pm, he was not wearing his uniform orange shirt. (Doc. No. 38, PageID# 149; Doc. No. 39-2, PageID# 234, ¶ 3; Doc. No. 39-3, PageID# 244, ¶ 3.) When Halley saw that Boyd was not wearing the required shirt, he told Boyd to put it on. (Doc. No. 38, PageID# 150; Doc. No. 39-2, PageID# 234, ¶ 4; Doc. No. 39-3, PageID# 245, ¶ 4.) Boyd refused, claiming that Halley had taken his orange shirt while Boyd was sleeping. (Doc. No. 38, PageID# 150; Doc. No. 39-2, PageID# 235, ¶ 5.) Halley told Boyd that he had received two orange shirts[2] when he was admitted to the jail, and Halley again told Boyd to put on his orange uniform shirt, or he would not receive a lunch tray. (Doc. No. 38, PageID# 150; Doc. No. 39-2, PageID# 235, ¶ 8.) Boyd refused. (Doc. No. 39-3, PageID# 244, ¶ 4.)

Boyd asked the inmates operating the food cart to give him a tray; they refused to do so. (Doc. No. 38, PageID# 151; Doc. No. 39-2, PageID# 235, ¶ 9.) He then took a tray from the cart without Halley's authorization. (Doc. No. 38, PageID# 151; Doc. No. 39-2, PageID# 235, ¶ 10; Doc. No. 39-3, PageID# 245, ¶ 5.) Halley immediately told Boyd to put the tray down, but Boyd did not. (Doc. No. 38, PageID# 151; Doc. No. 39-2, PageID# 235, ¶ 11; Doc. No. 39-3, PageID# 245, ¶ 5.) Halley grabbed the tray and attempted to remove it from Boyd's hands, without touching Boyd, but Boyd did not let go of the tray. (Doc. No. 38, PageID# 151; Doc. No. 39-2, PageID#

---

[2]  According to a form Boyd signed acknowledging receipt, Boyd did receive two shirts upon his admission to the jail on December 5, 2015. (Doc. No. 38, PageID# 150; Doc. No. 39-1, PageID# 162, ¶ 11, PageID# 208.) Boyd's second orange uniform shirt was later found in Boyd's cell on his cellmate's bunk. (Doc. No. 38, PageID# 150; Doc. No. 39-2, PageID# 235, ¶ 7.)

235, ¶ 12; Doc. No. 39-3, PageID# 245, ¶ 5.) Halley was eventually able to remove the tray from Boyd's grasp and instructed Boyd to place his hands behind his back, which Boyd did not do. (Doc. No. 38, PageID# 152; Doc. No. 39-2, PageID# 235–36, ¶¶ 13, 15; Doc. No. 39-3, PageID# 245, ¶ 6.) Halley took control of Boyd's wrists, placed them behind his back, and handcuffed him for transport to the booking area of the jail. (Doc. No. 39-2, PageID# 236, ¶¶16–18.)

Throughout the walk from the lunch area to booking, Boyd threatened Halley and struggled to pull away from him. (Doc. No. 38, PageID# 153; Doc. No. 39-2, PageID# 236, ¶¶ 20–22; Doc. No. 39-3, PageID# 245, ¶ 10.) Boyd's handcuffs apparently tightened as a result of Boyd's struggling against them, and he complained to Halley that they were too tight, demanding that they be removed. (Doc. No. 38, PageID# 154; Doc. No. 39-2, PageID# 236, ¶¶ 23–24.) Halley refused this request until Boyd was placed into a cell in the booking area, whereupon Halley removed Boyd's handcuffs. (*Id.* at PageID# 236–37, ¶¶ 24–25.) Boyd only wore the handcuffs for the short walk to the booking area. (*Id.* at PageID# 237, ¶ 26.) Once Halley removed the handcuffs, indentation marks were visible on Boyd's wrists, but there was no indication of cuts, blood, or other "trauma." (Doc. No. 38, PageID# 155; Doc. No. 39-2, PageID# 237, ¶ 27.)

In his complaint, Boyd describes the incident somewhat differently. He states that he got in line for chow call not wearing his orange shirt because Halley had taken it while he was sleeping. (Doc. No. 1, PageID# 5.) He states that he told Halley that he had a right to be fed and picked up a lunch tray. (*Id.* at PageID# 6.) He states that he then put the tray down pursuant to Halley's order to do so. (*Id.* at PageID# 6–7.) Boyd states that then Halley grabbed Boyd's wrist "with brute force," handcuffed him too tightly, "jerk[ed]" his arm, and "kept twisting" his left arm while escorting him to the booking office. (*Id.*) Boyd states that this caused his wrist to bleed and that the jail provided him with an icepack for his injuries. (*Id.*)

### B. Procedural History

On March 31, 2016, Boyd, proceeding pro se and in forma pauperis, filed this action bringing claims under 42 U.S.C. § 1983 based on the lunchtime incident with Halley at the Dickson County Jail. (Doc. No. 1, PageID# 5.) Upon initial review pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915 *et seq.*, the District Court found that Boyd had stated a colorable Fourteenth Amendment excessive force claim against Halley. (Doc. No. 4, PageID# 24.) On April 22, 2016, Boyd sent a letter to the Court stating that he "would like to add the defendants . . . Bill Rial, Jeff Bledsoe, Jerome Holts, Rhonda Felts[,]" whom he identified as the people "who Deputy Halley work[s] for."[3] (Doc. No. 9, PageID# 32.) The Clerk's Office docketed this letter as an amended complaint and issued summonses for Rial, Bledsoe, Halley, Felts, and Holt, all of which were returned executed. (Doc. Nos. 9, 12–17.)

On December 9, 2016, Defendants Bledsoe, Felts, Halley, Holts, and Rial filed a motion for summary judgment (Doc. No. 36) accompanied by a supporting memorandum of law (Doc. No. 37) and statement of undisputed material facts (Doc. No. 38), as well as the affidavits of Felts (Doc. No. 39-1), Halley (Doc. No. 39-2), and Brush (Doc. No. 39-3). Defendants argue that summary judgment is appropriate because Halley's conduct does not rise to the level of a constitutional violation and, even if it did, he is entitled to qualified immunity because his actions were not objectively unreasonable. (Doc. No. 37, PageID# 136–37, 139.) With respect to Boyd's claims against Halley's supervisors, Defendants argue that Boyd has failed to provide evidence to support a claim of supervisory liability. (*Id.* at PageID# 141.)

---

[3] On May 3, 2016, Boyd filed a document titled "Civil Rights/Neglect" and docketed as "STATEMENT of facts" that appears to be identical to his original complaint except that Boyd added Rial, Bledsoe, Holt, and Felts, to the "certificate of service" section, along with someone named "Allen," and attached grievance documents relevant to the January 30, 2016 incident. (Doc. No. 11.)

Boyd has not responded to Defendants' Motion or Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of a plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, a court's task is not "to weigh the evidence and determine the truth of the matter" but instead "to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). An issue of fact is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* (quoting *Anderson*, 477 U.S. at 252). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Brown v. Lewis*, 779 F.3d 401, 410 (6th Cir. 2015).

## III. Analysis

This Court's Local Rules 7.01(b) and 56.01(c) and (g) address a litigant's failure to respond to motions generally and to statements of material facts filed with motions for summary judgment. Local Rule 7.01(b) states, in pertinent part, that "[f]ailure to file a timely response [to a motion] shall indicate that there is no opposition to the motion." With respect to responses to statements of

material facts at summary judgment, Local Rule 56.01(g) provides that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for the purposes of summary judgment." Defendants filed their Motion and Statement of Undisputed Facts on December 9, 2016, and, as noted above, Boyd never responded to either.

However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded," *Evans v. Plummer*, No. 16-3826, 2017 WL 1400495, at *9 (6th Cir. Apr. 19, 2017) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). The court must instead examine the movant's motion to determine whether he has discharged his burden of demonstrating the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. *Id.* Accordingly, the undersigned will assess the merits of Defendants' motion based upon the record presented.

Boyd's sole claim is that Halley used excessive force against him during the lunch tray incident, in violation of the Fourteenth Amendment's Due Process Clause. Under § 1983, a plaintiff may bring "a cause of action against any person who, under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution and federal law." *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996). Because Boyd was a pretrial detainee at the time of the incident, in assessing his Fourteenth Amendment claim the Court must determine "whether [he] shows that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 538 (6th Cir. 2015) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

"A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473. In conducting this fact-intensive inquiry, a court must also consider

the "legitimate interests" that come from the need to manage the facility in question and defer where appropriate to policies and practices that jail officials determine are necessary "to preserve internal order and discipline and to maintain institutional security." *Id* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). Factors relevant to the reasonableness of the force used include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id. Kingsley* reaffirmed that pretrial detainees cannot be subjected to "the use of excessive force that amounts to punishment" and that, in the absence of an "expressed intent to punish," detainees can show that a given use of force amounts to punishment by providing objective evidence that the force "is not rationally related to a legitimate nonpunitive governmental purpose" or that it is "excessive in relation to that purpose." *Id.* at 2473–74 (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *Bell*, 441 U.S. at 538, 561).

In light of this standard and the undisputed facts, Defendants are entitled to judgment as a matter of law. Halley's grabbing Boyd's wrists, handcuffing him, and escorting him to booking was not objectively unreasonable where Boyd refused to follow Halley's direct order and attempted to resist his use of handcuffs.

### A. Halley

Boyd claims that Halley used unnecessary force against him after he picked up a lunch tray without putting on his uniform orange shirt. The evidence, undisputed by virtue of Boyd's failure to respond or introduce contrary evidence outside of the pleadings, shows that, despite Halley's repeated instructions to Boyd to put on an orange shirt in order to receive a lunch tray, Boyd did not do so. (Doc. No. 39-2, PageID# 235, ¶ 8.) After Boyd nonetheless picked up a lunch tray, Halley told him to put down the tray and Boyd refused. (Doc. No. 39-2, PageID# 235, ¶ 11; Doc.

No. 39-3, PageID# 245, ¶ 5.) Boyd also refused to let go of the tray when Halley attempted to remove it from his hands. (Doc. No. 39-2, PageID# 235, ¶ 12; Doc. No. 39-3, PageID# 245, ¶ 5.) After Halley removed the tray from Boyd's grasp and instructed him to put his hands behind his back for handcuffing, Boyd again refused. (Doc. No. 39-2, PageID# 235–36, ¶¶ 13, 15; Doc. No. 39-3, PageID# 245, ¶ 6.) Halley then took control of Boyd's wrists, placed them behind his back, and handcuffed him in order to transfer Boyd to the booking area of the jail. (Doc. No. 39-2, PageID# 236, ¶¶16–18.) During the walk from the lunch area to the booking area, Boyd struggled, tightening the handcuffs; Halley, following jail policy, refused to remove them until Boyd was placed into a booking cell, despite Boyd's request that he do so. (Doc. No. 39-2, PageID# 236–37, ¶¶ 19–20, 23–25; Doc. No. 39-3, PageID# 245, ¶ 10.) The tight handcuffs left indentation marks on Boyd's wrists. (Doc. No. 39-2, PageID# 237, ¶ 27.)

A jail official's decision to use force is generally entitled to deference. *See Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). A jail official may use force when a detainee or inmate refuses to comply with a direct order. *Erby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002) (upholding a cell extraction and the use of gas after an inmate refused to remove his hand from the food slot in his cell door). An official may also use force to gain control over a detainee. *Griffin*, 604 F.3d at 954–55. In *Griffin*, an officer executed a "leg-sweep maneuver" on a detainee, which caused her to fall and another officer to fall on top of her, fracturing her tibia. *Id.* at 951. The officer's use of force was found to be reasonable because the detainee had raised her voice with a nurse, walked away from the officer when he was speaking with her, attempted to jerk her arm away from him, and attempted to get away from him and another officer when they attempted to return her to her cell. *Id.* at 951, 954–55.

Halley's use of force was also reasonable under the circumstances. He ordered Boyd to put on his orange shirt and put down the lunch tray and, even after Boyd refused to relinquish the tray, Halley only touched Boyd after Boyd refused to put his hands behind his back. Despite Boyd's attempts to pull away from Halley during the walk to booking, Halley maintained control of Boyd and did not escalate the degree of force. The evidence shows that the force Halley used against Boyd was not motivated by an intent to punish, was rationally related to the purposes of maintaining order and discipline, and was minimal and not excessive in relation to these purposes. *See Erby*, 47 F. App'x at 745 (citing *Hudson v. McMillian*, 503 U.S. 1, 5–6 (1992)). No reasonable jury could find that Halley's use of force was excessive, and he is entitled to summary judgment.

### B. Halley's Supervisors

As a threshold matter, Defendants question whether joinder of Rial, Bledsoe, Holt, and Felts as defendants to Boyd's claims is proper. (*See* Doc. No. 37, PageID# 127–28, 140.) On April 22, 2016, Boyd notified the Court that he would like to add these four individuals, identified as Halley's supervisors, as defendants. The Clerk's Office docketed Boyd's letter as an amended complaint and issued process on the new defendants. (Doc. No. 9, PageID# 32; Doc. Nos. 12–17.) Construing Boyd's filing liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the Court will do so as well. Defendants accepted service and did not move to dismiss the amended complaint.

Because Boyd's Complaint was filed on March 31, 2016, and his amended complaint was postmarked on April 19, 2016, his request to add these four defendants was timely pursuant to the prison mailbox rule and Federal Rule of Civil Procedure 15(a)(1)(A), which permits amendment to a pleading "once as a matter of course within 21 days after serving it." *See Carter v. Corr. Corp. of Am.*, No. 1:15-cv-00090, 2015 WL 7015557, at *2 (M.D. Tenn. Nov. 12, 2015); *Powell v. Ohio*,

No. 2:07cv754, 2007 WL 3113329, at *3 (S.D. Ohio Oct. 22, 2007) ("The mailbox rule teaches that Plaintiff's motion to amend and/or amended complaint would be deemed timely filed as of the date it was placed in the jail mail system."). Nonetheless, Boyd's claims against Defendants Rial, Bledsoe, Holt, and Felts fail as a matter of law.

In order to establish supervisory liability, "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Coley*, 799 F.3d at 542 (quoting *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)). Because Halley's conduct did not violate Boyd's constitutional rights, there is no basis for supervisory liability. *See McQueen v. Beacher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (finding it "clear that a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor"). More importantly, Boyd makes no allegations in his complaint or amended complaint that these defendants participated in the incident in any way. (Doc. Nos. 1, 9.) Accordingly, Defendants are entitled to judgment as a matter of law on all claims against Rial, Bledsoe, Holt, and Felts.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge RECOMMENDS that Defendants' Motion for Summary Judgment (Doc. No. 36) be GRANTED.

Any party has fourteen (14) days after being served with this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days after being served with a copy thereof in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of the matters disposed of therein. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered this 11th day of August, 2017.

ALISTAIR E. NEWBERN
United States Magistrate Judge